**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JAMES SHELLEY,

    Plaintiff,

v.                                          Case No: 8:19-cv-1340-JSM-AAS

GREATER BAY PLUMBING INC., et al,

    Defendants.
_____/

## SUMMARY JUDGMENT ORDER

THIS CAUSE comes before the Court upon Defendants' Motion for Summary Judgment (Dkt. 26) and Plaintiff's Response in Opposition (Dkt. 29). The Court, having reviewed the motion, response, record evidence, and being otherwise advised in the premises, concludes that Defendants' motion should be denied because the record is rife with material disputed facts precluding judgment as a matter of law on Plaintiff's discrimination and retaliation claims.

## BACKGROUND

Plaintiff James Shelley started working for Defendant Greater Bay Plumbing, Inc. as a plumber's helper on January 2, 2019. At that time, he was Greater Bay's only black employee. Greater Bay knew that Shelley needed training because he lacked plumbing experience. Shelley was hired for a 90-day probationary period. Shelley's supervisors

1

were Defendant Jeffrey Sarmiento, the owner of Greater Bay, and Shop Supervisor Darrel "Blaze" Seitz.

On April 30, 2019, Shelley arrived at work and saw a hangman's noose hanging down above the area where he placed his tool bag down every day. Shelley took a picture of the noose and sent the picture to his wife. Shelley had never seen a noose at Greater Bay prior to April 30, 2019. Shelley testified that he did not touch the noose because he felt like it was meant for him. He went on to state that "I just felt like me being the only African-American there, only black guy, [only] black employee there, that you should know not to hang a noose up at your job site." (Shelley Deposition at 83:14–16). Shelley explained the fear he experienced when he saw the noose as follows: "But all I know is I just keep seeing this rope, seeing this noose. When you go to sleep at night, and you got to think about, okay, somebody put up a noose, you have to think about, were these people really implicating, like, if I don't leave, they'll do something to me. And if I -- if I -- if we -- if I don't leave, they'll do this or do that. And at the end of the day, I don't know or didn't know what to expect. Everybody gots [sic] a gun out there. Some of them tote a gun at work. I mean, I don't know what I was dealing with." *Id.* at 134:7–16.

Shelley did not see who hung the noose—the only two people who typically arrived to work before him were his supervisors, Sarmiento and Seitz. Shelley testified he was so surprised when he saw the noose he had difficulty grasping what "they were trying to do."

*Id.* at 50-51. He then asked another employee, Jacob Radar, "What's this noose doing up, like, what is that up for?" *Id.* at 52:1–8). Radar did not respond.

On May 1 or May 2, 2019, Shelley came to work and saw his coworkers playing with the noose. Specifically, employee Dean Lutz had the noose around his neck. Shelley told him to take it down and Lutz and the other employees started laughing. Shelley also told supervisors Sarmiento and Seitz that Lutz needed to take the noose off of his neck and that the noose should be removed. According to Shelley, the noose stayed up for about ten days.[1]

According to Sarmiento, he never saw the noose (that Shelley had photographed) before this lawsuit was filed. Defendants contend that the facility where Greater Bay is located has two garage bays with ten-foot tall doors. Each garage door has a rope that is used to pull down the garage door and those ropes have been there since Greater Bay moved to the facility. Text messages from Sarmiento to Seitz contradict Sarmiento's deposition testimony about the noose. In the text messages, Sarmiento admits the rope was tied in a "hangman's [k]not" and goes on to state he needs to get a statement that this "was done before he [Plaintiff] started." (Dkt. 29).

---

1 Shelley's wife testified that Shelley told her about finding the noose at work, sent her a picture of it, and also explained to her that he demanded Lutz to remove the noose from around his neck.

3

Besides a hangman's noose being hung over where he put his tools, Shelley experienced additional instances of what he considered race discrimination working for Defendants. For example, Sarmiento brought his dog to work and, when Shelley asked if it would bite him, Sarmiento said "Oh, it's probably the first time he's seeing one of them," meaning a black man. (Shelley deposition at 57: 22–58: 5).

During another incident, which occurred after the noose was hung, Sarmiento brought in doughnuts for the employees. When Shelley went to take a doughnut, he was told that the black doughnuts had been separated from the other colored doughnuts.

Shelley was fired approximately seven to ten days after complaining about the noose. The circumstances surrounding Shelley's termination are highly disputed and the record reflects that Defendants' reasons for Shelley's termination changed numerous times. According to Shelley, when he arrived at work on May 10, 2019, Seitz terminated his employment. (Shelley deposition at 63:3–10). Seitz informed Shelley that things were "not working out," that Shelley lacked ambition, and business was slow so there was no further need for Shelley.

Jacob Radar, a former Greater Bay technician, testified he was "surprised, I really didn't see it coming….Well, I don't know. I guess I didn't see it coming. I didn't think – he [Plaintiff] had basically [been] working with me since his start date as an apprentice, and, you know, Jeff [Sarmiento] came to me with my opinion on what I thought about the guy as far as workmanship goes. And, you know, I told him my opinion, and I thought he

4

was going to end up working out pretty well with us."  (Radar deposition at 14:3–12).

According to Sarmiento, he instructed Seitz to fire Shelley because he was not sure where Shelley had gone the day before his termination with a company truck for several hours and, when Shelley returned, the truck smelled like pot.  According to Shelley, he was never confronted with missing time because he was never "missing."  (Shelley Decl. at ¶¶ 13–16).  Also, the other Greater Bay employees working at that time testified that they were not looking for Shelley on the day Sarmiento claims Shelley disappeared with the truck.  Radar did not recall the day before Shelley was terminated and was "surprised" when Shelley was fired.  (Radar deposition at 23:12-13).  Yet, Sarmiento testified that he discussed Shelley's alleged disappearance with Seitz, Justin Garner, Darin Seitz, and Radar on the morning of May 10, 2019, immediately *before* terminating Shelley.  Seitz testified he did not know Shelley was "missing" on the actual day Shelley went missing; he learned of it the following morning.

The record reflects that Defendants provided other reasons for Shelley's termination.  For example, the record reflects that Defendants held a meeting after this lawsuit was filed and Sarmiento instructed Seitz and other Greater Bay employees to testify Shelley was fired for lack of work ethic.  Additionally, in a private text message Sarmiento provided a different reason, stating he fired Shelley for "dealing drugs" and "no one wanted to work with the lazy bastard."  (Dkt. 29 at Exhibit B).

Shelley filed the instant action alleging race discrimination and retaliation in violation of 42 U.S.C. §1981. Defendants move for summary judgment on both claims.

## SUMMARY JUDGMENT STANDARD

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## **DISCUSSION**

The essential elements of a section 1981 employment discrimination claim are the same as a Title VII employment discrimination claim. *See Bass v. Bd. of Cnty. Comm'rs, Orange Cnty., Fla.*, 256 F.3d 1095, 1109 (11th Cir. 2001) (noting same). A plaintiff may establish a prima facie case of discrimination through direct or circumstantial evidence. *See Jackson v. Rooms To Go, Inc.*, No. 8:06-cv-01596-T-24EAJ, 2008 WL 2824814, at *5 (M.D. Fla. July 21, 2008) (citing *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998)). The record is clear that there is no direct evidence of discrimination; therefore, Shelley may prove his claim through the familiar *McDonnell Douglas* circumstantial evidence framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

To establish a prima facie case for disparate treatment, Shelley must establish that (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) Defendant treated similarly situated non-black employees more favorably; and (4) he was qualified to do the job.  *See McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008).

For his retaliation claim, Shelley must show that "(1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression."  *Weeks v. Harden Mfg. Corp.,* 291 F.3d 1307, 1311 (11th Cir. 2002).  A plaintiff can satisfy the causation element by presenting sufficient evidence that the decision-maker was aware of the plaintiff's protected conduct, and a close proximity between this awareness and the adverse employment action existed.  *Higdon v. Jackson,* 393 F.3d 1211, 1220 (11th Cir. 2004).  A plaintiff must prove but-for causation—that the unlawful retaliation would not have occurred in the absence of the protected activity—to establish a claim of retaliation under Title VII.  *University of Texas Southwestern Medical Center v. Nassar,* 133 S.Ct. 2517, 2533-34 (2013).

Under both claims, i.e., discrimination and retaliation, if the employee is able to establish his prima facie case, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for the employment action.  *McDonnell Douglas Corp.,* 411 U.S. at 802.  If Defendants meets this burden of production, the presumption of discrimination raised by the prima facie case is rebutted.  *See Texas Dep't*

8

*of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981).  Shelley must then show that Defendants' proffered legitimate, non-discriminatory reason is pretextual.  *See id.*

To prove pretext, a plaintiff has to show that his "employer's explanation is unworthy of credence."  *Jackson v. Ala. State Tenure Comm'n,* 405 F.3d 1276, 1289 (11th Cir. 2005) (citing *Tex. Dep't of Cmty. Affairs,* 450 U.S. at 256).

Because the record is so disputed, the Court's discussion on why Defendants' motion must be denied will be brief.  First, there is sufficient evidence establishing Shelley's prima facie case for both claims.  He was terminated soon after he complained about race discrimination and other (white) employees had been treated more favorably with respect to any performance issues.  Shelley's response in opposition discusses these matters in great detail.

The record also reflects sufficient facts to establish pretext.  The record reflects that Defendants provided shifting reasons for Shelley's termination.  Defendants first stated that Shelley was "not working out," lacked ambition, and business was slow so there was no need for him.  Subsequently, Defendants stated that Shelley was terminated because he "went missing" the day before and the company truck smelled like pot.  But then Defendants appeared to claim that Shelley was a drug dealer and lazy.

It is worth emphasizing that Defendants' employees appeared confused about the reason for Shelley's termination.  Shelley had not been counseled for poor performance despite the fact that Sarmiento typically counseled his employees about their performance issues before he terminated them.

With respect to the claim that Shelley had been smoking pot, the record contains ample evidence that marijuana use was customary at Greater Bay. Marijuana was a common topic of conversation at Greater Bay, and Greater Bay employee Jacob Radar obtained marijuana for other employees. Sarmiento admitted he bought marijuana from Radar in the parking lot at work. The record also reflects that Sarmiento typically smelled like pot, his truck smelled like pot, he passed out "edibles" at the office, and Sarmiento's office smelled like pot.

Notably, summary judgment in Defendants' favor would also be inappropriate under the mosaic test advanced in *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1341 (11th Cir. 2011). In *Smith*, the Eleventh Circuit noted that regardless of the outcome of the *McDonnell Douglas* analysis, "the plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Id* at 1328. A triable issue of fact exists if, viewed in a light most favorable to the plaintiff, the record presents "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.* (quoting *Silverman v. Bd. Of Educ.,* 637 F.3d 729, 734 (7th Cir. 2011)).

"A 'convincing mosaic' may be shown by evidence that demonstrates, among other things, (1) 'suspicious timing, ambiguous statements ..., and other bits and pieces from which an inference of discriminatory intent might be drawn,' (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is

10

pretextual." *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1185 (11th Cir. 2019).

In *Smith*, the plaintiff could not establish a prima facie case of race discrimination under the *McDonnell Douglas* framework. But the plaintiff presented evidence that the paperwork in an investigation into racist emails explicitly identified employees by race. *Id.* at 1336-37, 1341, 1345-46. The plaintiff also presented evidence that he was fired along with all other employees that the paperwork identified as white, while no black employees under investigation were terminated. *Id.* at 1338-44.

Here, viewing all the evidence in a light most favorable to Shelley, there is circumstantial evidence of race-conscious decision-making. As to the first element, Shelley's termination was "suspiciously timed." It occurred just ten days after he complained to Sarmiento about the noose and came completely without warning. The "ambiguous statements" component is met by Sarmiento's contradictory deposition testimony, discriminatory comments, and text messages. The numerous shifting reasons for Shelley's termination, photograph of the noose, and Sarmiento's text message describing a hangman's knot in the noose further buttress Shelley's pretext arguments. They comprise the "bits and pieces from which an inference of discriminatory intent might be drawn" needed to satisfy the first element of Plaintiff's race claim under the Eleventh Circuit's convincing mosaic standard.

With respect to the second element, the record reflects that Defendants treated similarly-situated non-black employees better. Sarmiento warned other Greater Bay employees about perceived poor performance, giving them the opportunity to make

11

corrections. White employee Dean Lutz, who like Plaintiff was also an apprentice, had been "talked to" by Sarmiento about poor performance but not fired. (Lutz deposition at 30:14-25). Defendants verbally coached and tolerated six months of poor performance from Marcin Makowiecki, another white Greater Bay employee, before actually terminating him.

Finally, the Court has already discussed the third element required under the convincing mosaic standard—that the employer's justification is pretextual.

In sum, in addition to satisfying the *McDonnell Douglas* framework, Shelley has established the Eleventh Circuit's convincing mosaic standard set out in *Lewis*. There are too many material disputed facts to decide Shelley's claims as a matter of law. Accordingly, it is therefore **ORDERED AND ADJUDGED** that Defendants' Motion for Summary Judgment (Dkt. 26) is denied.

**DONE** and **ORDERED** in Tampa, Florida, this August 5, 2020.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record